UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/6/18

ANTHONY ARRIAGA,

               Plaintiff,

-against-

DR. DANA GAGE (N.Y.S. D.O.C.C.S. SING SING
C.F. HEALTH CARE PROVIDER) *Individual and
Official Capacity*; DR. RAZIA K. FERDOUS (N.Y.
D.O.C.C.S. SING SING C.F. FACILITY HEALTH
SERVICES DIRECTOR) *Individual and Official
Capacity*; C.O. ALVARADO (SING SING C.F.
CORRECTION OFFICER) *Individual and Official
Capacity*; DR. JOSHUA VERNATTER
(MONTEFIORE MOUNT VERNON HOSPITAL
DOCTOR) *Individual and Official Capacity*,

               Defendants.

16-cv-1628 (NSR)

OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Anthony Arriaga ("Plaintiff"), proceeding *pro se*, commenced this action on

March 3, 2016, pursuant to 42 U.S.C. § 1983 for alleged Eighth and First Amendment violations,

(*see* Complaint ("Compl."), (ECF No. 2)), against Defendants Dana Gage ("Dr. Gage"), Razia K.

Ferdous ("Dr. Ferdous"), Corrections Officer Alvarado ("Alvarado") (collectively, the "State

Defendants"), and Joshua Vernatter ("Dr. Vernatter"), (*id.*)

Presently before the Court are four motions: (1) the State Defendants' motion to dismiss

for lack of subject matter jurisdiction and for failure to state a cause of action pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively; (2) Dr. Vernatter's motion to dismiss

for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6); (3)

Plaintiff's motion for a preliminary injunction; and (4) Plaintiff's motion for sanctions. (*See* The

State Defendants' Brief in Support of the Motion to Dismiss ("State Defs. Br.") (ECF No. 39), at

3-4; Dr. Vernatter's Brief in Support of the Motion to Dismiss ("Def. V. Br.") (ECF No. 47), at 1;

Plaintiff's Brief in Support of the Motion for Injunctive Relief ("Plf. Mot.") (ECF No. 56), at 2;

Plaintiff's Not. of Motion for Sanctions (ECF No. 65), at 5.)  For the following reasons, the State

Defendants' motion is GRANTED in part and DENIED in part, Dr. Vernatter's motion is

GRANTED, and Plaintiff's Motions for Injunctive Relief and Sanctions are DENIED.

## FACTUAL BACKGROUND

### A.  Facts Related to the Motions to Dismiss

The following facts are taken from Plaintiff's Complaint and are accepted as true for

purposes of this motion.[1]

Plaintiff is a *pro se* inmate housed at Sing Sing Correctional Facility ("Sing Sing"), a prison

within the New York State Department of Corrections and Community Supervision ("DOCCS").

Plaintiff initiated this action on or about March 3, 2016, for alleged violations of his Eighth and

First Amendment rights to adequate medical care and to be free from retaliation, respectively.  (*See*

Compl. at 2-7.)[2]  The conduct that forms the basis of Plaintiff's Complaint occurred between

March 2015 and January 2016.  (*Id.*)

Plaintiff alleges that he suffers from herniated and bulging discs that cause him extreme

back pain, for which he was originally prescribed Naproxen.  (*See* Compl. at 3, 7.)  In early April

of 2015, Plaintiff began complaining of his back pain to the nurses at sick call and was prescribed

200mg tablets of Ibuprofen, which he alleged to be insufficient.  (*Id.*)  At some unspecified time

thereafter, Plaintiff sent letters to his health care provider at the time, Dr. Ferdous, which went

unanswered.  (*Id.*)  In a grievance regarding this failure to respond to his letters, Plaintiff took issue

---

[1] The Court assumes the truth of the facts alleged in Plaintiff's Complaint for purposes of this motion only.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] As Plaintiff is proceeding *pro se* and his Complaint is the standard, fillable form amended complaint, all citations thereto will be to pages, not paragraphs.

2

with Dr. Ferdous's position of not entertaining inmate letters and recommending that they go to sick call instead. (*Id.* at Ex. C.)

On April 6, 2015, Plaintiff's pain became so intolerable that he was transferred outside of the facility to Montefiore Mount Vernon Hospital ("Montiore") where he was admitted for three days, unable to move. (*Id.* at 3.) During his hospitalization, Plaintiff was treated by Dr. Vernatter and underwent a CAT Scan, blood tests, and was prescribed Percocet and Baclofen for the pain. (*Id.* at Ex. A.) Dr. Vernatter informed Plaintiff that he would be "given a shot due to [his] back spasm", but ultimately Plaintiff was discharged on April 9, 2015 without having received the shot or a discharge plan. (*Id.* at 3, Ex. A.)

When he returned to Sing Sing on April 9, 2015, Plaintiff was admitted to the facility's infirmary until April 22, 2015. (*Id.* at 3.) Upon his discharge, Dr. Muthra[3] issued Plaintiff a medically prescribed pass ("medical pass") which permitted him daily showers, the use of a cane, and relief from work and sports. (*Id.* at 3.) That pass expired on April 27, 2015, and in the days preceding its expiration, Plaintiff unsuccessfully attempted to meet with medical staff to have it renewed. (*Id.* at 4.) On May 1, 2015, Plaintiff was scheduled to see Dr. Ferdous, but that appointment was cancelled and Plaintiff filed a grievance. (*Id.* at 4, Exs. B-C.) On May 4, 2015, Plaintiff went to sick call regarding his medical passes, but "nothing was ever done." (*Id.* at 4.)

In early May of 2015, Plaintiff was treated by Dr. John Galeeno, an outside orthopedic specialist, who discussed treatment options including "foot insoles, orthopedic sneakers, orthopedic boots, physical therapy", cortisone injections, and a double/medical mattress. (*Id.* at 5.) Plaintiff sent a letter to Dr. Gage, Facility Health Services Director ("FHSD") at Sing Sing, requesting this treatment, and Dr. Gage purportedly told Dr. Ferdous to inform Plaintiff that "security denied [his] medical mattress for security reasons", a statement Plaintiff believes was

---

[3] Dr. Muthra is not a party to this action.

fabricated.  (*Id.*)  In response, Plaintiff filed a grievance and a complaint with the New York State Department of Health ("DOH") against Dr. Gage on May 6, 2015.  (*Id.* at 4, Ex. D.)  He also filed a "Reasonable Accommodations Request" to L. Malin (Deputy Superintendent for Programs) asking that Malin consult with Dr. Galeeno regarding the treatment.  (*Id.* at 4, Ex. F.)  Plaintiff alleges his request was denied when "Ms. Malin chose to consult with Dr. Gage."  (*Id.*)

The day after Plaintiff filed the grievance against Dr. Gage, Dr. Ferdous authored a medical pass for Plaintiff that would include a bus pass, and permission to take daily showers, carry a cane, receive feed-up (where food is brought to the inmate's cell), and wear transition lenses.  (*Id.* at 4.)  As with his others, this medical pass required the approval of Dr. Gage.  (*Id.*)  Instead of immediately signing this medical pass – as was her custom – Dr. Gage purportedly stated that she would "think about signing the pass", (*id.*) and ultimately, on May 15, 2015, issued a medical pass for the use of a cane only, (*id.* at Ex. H; *see also* Declaration of Jeffrey Hale in Support of the State Defendants' Motion to Dismiss ("Hale Decl.") (ECF No. 37), at Ex. A.)[4]  Plaintiff alleges that this conduct was done to deny and interfere with his medical treatment, (*id.* at 4), and in retaliation for filing a grievance, (*id.* at 4, Ex. H.)

In November of 2015, Dr. Gage was purportedly demoted from the position of FHSD and assigned as Plaintiff's primary health care provider.  (*Id.* at 6.)  While in this position, during the months of December 2015 and January 2016, Dr. Gage gave Plaintiff "medical call out every week" for appointments with her.  (*Id.*)  During every single call out, Plaintiff would arrive and wait for hours, "causing severe back pain due to sitting on hard benches and standing."  (*Id.*)  Eventually, a corrections officer would approach Plaintiff and say that Dr. Gage "doesn't know when she's going to see you."  (*Id.*)  Dr. Gage did not see Plaintiff during any of these visits.  (*Id.*)

---

[4] The court is permitted to consider this document without converting this to a motion for summary judgment, as it is "integral" to Plaintiff's Complaint; indeed, an incomplete copy was attached thereto.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Chamberlain v. White Plains*, 986 F. Supp. 2d 363, 379 (S.D.N.Y. 2013).

With respect to Alvarado, Plaintiff alleges that he deliberately interfered with his medical treatment on two occasions. (*Id.* at 6-7.) On May 25, 2015, Alvarado confiscated Plaintiff's cane and cane pass while Plaintiff was attempting to walk through the metal detector. (*Id.* at 6.) Alvarado claimed to have authority from medical staff to do so. (*Id.*) On December 14, 2015, Alvarado confiscated Plaintiff's medically prescribed glasses during a search and wrote "a false misbehavior report against" Plaintiff. (*Id.* at 7.) In response to both instances, Plaintiff filed grievances, (*see id.* at Exs. K, L), alleging that Alvarado was interfering with his medical treatment and that his conduct was done "for purposes of harassment; and retaliation . . . ." (*Id.*)

### B. Facts Related to the Motion for Injunctive Relief

Plaintiff's motion asserts that on April 25, 2017, a facility search was conducted and his "mattress and pillow were confiscated." (*See* Plf. Mot. at 2.) The mattress was returned on April 27, 2017, and on that day Plaintiff reportedly "sent in a sick call slip" but was not called to see a doctor until the following day. (*Id.* at 3.) During his visit on April 28, 2017, Plaintiff reportedly informed someone[5] that his back pain was "severe due to his mattress and pillow being wrongfully confiscated", that his medical pass was due to expire on May 3, 2017, that two of his prescriptions needed refills, and he needed to see an ophthalmologist for new lenses and frames. (*Id.*) He was informed that his concerns would be relayed to his health care provided "on that day." (*Id.*) During that visit, Plaintiff received the requested medication refills.

On May 1, 2016 and May 3, 2016, Plaintiff sent slips to sick call regarding his medical passes and pillow. (*Id.*) He was called to sick call on May 4, 2017 and spoke with an unidentified nurse regarding the expiration of his medical pass and the fact that he still had no pillow. (*Id.*) Thereafter, on May 7, 2017, Plaintiff wrote to Dr. Ferdous regarding the expiration of his medical pass, the unreturned pillow, and other medical issues. (*Id.* at 4.) Plaintiff filed this motion on May

---

[5] Plaintiff does not identify who he spoke with on April 28, 2017 at sick call.

15, 2017, requesting a preliminary injunction ordering Dr. Ferdous to issue "a *temporary* medical pass for: bus pass, cane pass, daily showers, feed-up, and transition lenses to not expire until a disposition of this case is rendered." (*Id.*) Plaintiff did not file any grievances with respect to this request or otherwise avail himself of any administrative remedies. (*See* Plaintiff's Reply in Support of the Motion for an Injunction ("Plf. Reply") (ECF No. 65), ¶6.)[6] Ultimately, Plaintiff admits that his medical pass was renewed on May 31, 2017. (*Id.* ¶1.)

## DISCUSSION

### I. Standard of Review

#### A. Rule 12(b)(6)[7]

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Courts must construe *pro se* pleadings in a particularly liberal fashion, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them "to raise the strongest arguments that they suggest,"

---

[6] This document was not filed on ECF as a reply in further support of the motion for an injunction, but is indeed Plaintiff's Reply and is hereby deemed as such.

[7] In opposition to both motions, Plaintiff repeatedly refers to the summary judgment standard, arguing that a grant of summary judgment to the Defendants, in absence of discovery would be unjust. (*See* Plaintiff's Opp. to State Defs. Mot. (ECF No. 41), ¶¶4-7; Plaintiff's Opp. to Dr. Vernatter's Mot. (ECF No. 78), ¶¶1-2.) The Defendants have filed pre-answer motions to dismiss, not for summary judgment. The Court is not considering a summary judgment standard at this time. The Court further notes that Plaintiff's Opposition to Dr. Vernatter's motion should have been, but was not, filed by Dr. Vernatter along with the other motion papers. Accordingly, the Court had it filed on April 6, 2018.

*Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted).

Nevertheless, a *pro se* plaintiff's pleading must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the Court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

A court's review is typically confined to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Where materials outside of the Complaint are offered in support or opposition to the motion to dismiss, the Court has a choice to make: "either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)) (internal quotations omitted). If the Court chooses the former approach, it must adhere to it strictly and not consider "affidavits and exhibits submitted" or "factual allegations contained in legal briefs or memoranda." *Id.* (quoting *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999); *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991)). Nevertheless, a court may consider documents attached to a motion to dismiss provided they are documents that are integral to the complaint without converting to a summary judgment motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Chamberlain v. White Plains*, 986 F. Supp. 2d 363, 379 (S.D.N.Y. 2013).

Accordingly, the Court declines to convert this into a motion for summary judgment and will therefore only consider the factual allegations in Plaintiff's Complaint, the documents attached

thereto, and the grievance attached to the Hale Declaration, as it is integral to Plaintiff's Complaint. The Court will consider no other documents or factual allegations *not* asserted in Plaintiff's Complaint.

**B. 12(b)(1)**

A challenge to a federal court's subject matter jurisdiction is properly raised by way of a 12(b)(1) motion. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *Alliance for Envt'l Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-88 (2d Cir. 2006). Without jurisdiction, the Court is devoid of the "power to adjudicate the merits of the case." *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). It is well-settled that the "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)). If an official or entity is entitled to sovereign immunity, a court has no subject matter jurisdiction to hear the case. *See Cooper v. N.Y. State Dep't of Mental Health*, No. 01-CV-943 (AGS), 2001 WL 456348, at *1 (S.D.N.Y. May 1, 2001); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 37-38 (2d Cir. 1977).

**II.    Eleventh Amendment Immunity**

The State Defendants move to dismiss all claims asserted against them in their official capacity. (*See* State Defs. Br. at 14.) Absent abrogation by Congress, a state is immune from suit in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-56 (1996); *see also Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990). This immunity extends to "arms of the state," which includes "officers employed by agencies such as" the DOCCS.[8] *Dube*, 900 F.2d

---

[8] Plaintiff's claims would not fall into the *Ex Parte: Young*, 209 U.S. 123 (1908), exception to the Eleventh Amendment as Plaintiff has not pled an "ongoing violation of federal law" seeking injunctive relief. *Aiken v. Nixon*, 80 F. App'x 146 (2d Cir. 2003) (summary order). Though part of the requested relief is injunctive, Plaintiff's Complaint alleges facts related to separate instances of alleged constitutional conduct and does not amount to allegations of ongoing violations. (*See* Compl. at 3-7); *compare with Corbett v. Annucci*, No. 16-CV-4492(NSR), 2018 WL 919832, at *8 (S.D.N.Y. Feb. 13, 2018); *Jude v. New York*, No. 07-CV-5890(RJS), 2009 WL 928134, at *5 (S.D.N.Y. Mar. 30, 2009).

at 594-95 (finding SUNY institution entitled to sovereign immunity); *see also Matteo v. Perez*, No. 16-CV-1837(NSR), 2017 WL 4217142, at *7 (S.D.N.Y. Sept. 19, 2017). Section 1983 claims against state officers in their official capacity are ripe for dismissal, as those officials are not considered "person[s] within the meaning of the statute." *Id.* (citing *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012); *Koehl v. Dalsheim*, 85 F.3d 86, 88-89 (2d Cir. 1996) for proposition that Section 1983 claims based on official capacity "barred by sovereign immunity"). Consequently, the Eighth Amendment claims against the State Defendants in their official capacity are hereby dismissed and the motion is granted in this regard.

### III.    Eighth Amendment Deliberate Indifference to Medical Needs[9]

A claim for inadequate medical care is born out of the Eighth Amendment's protection against cruel and unusual punishment. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (citing *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). To be entitled to relief, a plaintiff must plead and prove "deliberate indifference to his serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) ("*Hathaway II*") (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)) (alterations omitted).

Deliberate indifference is a dual-pronged analysis requiring proof of both an objective and subjective prong. *Hathaway II*, 37 F.3d at 66. The objective prong mandates the deprivation be, "in objective terms, sufficiently serious." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotations omitted). To satisfy the subjective prong, the official must act with "a

---

[9] Plaintiff asserts various other allegations of alleged deliberate indifference, including that he was given Ibuprofen instead of Naproxen (*see* Compl. at 3), that he was not provided a legible copy of his medical records (*id.* at 5), and that someone interfered with his physical therapy treatment (*id.* at 5-6.) Such allegations give rise to no colorable claims. First, Plaintiff has wholly failed to demonstrate that an alleged deprivation of legible medical records constitutes a constitutional violation. *Doe v. Conn. Dep't of Child and Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990); *Patterson v. City of New York*, No. 11-CV-7976(DLC), 2012 WL 3264354, at *4 (S.D.N.Y. Aug. 9, 2012) (noting that violations of regulations, alone, insufficient for constitutional violation). Further, in order to state a cognizable section 1983 claim, Plaintiff was required to plead personal involvement of each of the named Defendants, *see Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994), and has failed to state how, if at all, any of the Defendants were involved in these alleged deprivations; indeed, Plaintiff fails to even identify the individuals who allegedly interfered with his physical therapy or prescribed him Ibuprofen instead of Naproxen.

sufficiently culpable state of mind," *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991), in that the official "must know of and disregard an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

### A. Objective Prong

The objective prong requires a two part inquiry. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). First, there must be an actual "deprivation of adequate medical care," *id.* at 279; reasonable care is not a deprivation, *see Farmer*, 511 U.S. at 844-47. Then, the Court must determine whether that deprivation is sufficiently serious, which requires the existence of "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122 (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("*Hathaway III*")).

### 1. State Defendants

Drawing all possible inferences from his Complaint, Plaintiff asserts both a denial of treatment and inadequate care provided.[10] (*See* Compl. 4-6.) For the categorical denial of treatment, the Court must examine whether the "medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280. Plaintiff has alleged severe back pain which results from his herniated and bulging discs, (*see* Compl. 3, 7), a sufficiently serious condition; such condition is associated with extreme pain and leads to degeneration. *See Ceparano v. Suffolk Cnty. Dep't of Health*, 485 F. App'x 505 (2d Cir. 2012) (summary order) (Eighth Amendment pled where

---

[10] Plaintiff's allegations regarding the issuance of a medical pass for a cane only, amount to inadequate care provided. (*See* Compl. at 4-5.) Such a claim requires a narrow approach, focused on "the challenged" interference or deprivation, rather than the nature of the condition. *Salahuddin*, 467 F.3d at 280. Defendants are correct in arguing that Plaintiff has failed to plead how this amounts to an objectively serious deprivation. Indeed, on the facts alleged, the conduct may amount to a difference of opinion between medical doctors, *see Chance*, 143 F.3d at 703 (noting difference between deliberate indifference and difference of opinion in matter of medical judgment); *Woods v. Goord*, No. 01-CV-3255(SAS), 2002 WL 31296325, at *5 (S.D.N.Y. Oct. 10, 2002) (same true as between doctors), which is insufficient for deliberate indifference, though sufficient in this case for retaliation, *see infra* IV.

deliberate indifference to "severely herniated spinal discs"); *Dobbin v. Artuz*, 143 F. Supp. 2d 292, 302 (S.D.N.Y. 2001); *Williams v. Smith*, No. 02-CV-4558(DLC), 2009 WL 2431948, at *8 (S.D.N.Y. Aug. 10, 2009) (noting persistent back pain sufficiently serious). Plaintiff's allegations that Dr. Gage participated in the denial of Plaintiff's request to obtain the treatment recommended by his orthopedic specialist, Dr. Galeeno and made Plaintiff wait for hours once a week without ever actually providing treatment during the months of December 2015 and January 2016, are sufficient for an actual deprivaiton. (*See* Compl. at 4-6.) The objective prong is satisfied.

The central claim against CO Alvarado is that he interfered with Plaintiff's medical treatment when he confiscated Plaintiff's cane despite his having a medical pass for it. (*See* Compl. at 6-7.) In other words, by confiscating the cane, Alvarado denied him medical treatment. Accordingly, the question is whether the condition and deprivation were sufficiently serious. *Salahuddin*, 467 F.3d at 280. The Court need not linger on this issue; it has already determined that a herniated disc is sufficiently serious, and the denial of a medically prescribed cane constitutes an actual deprivation.[11]

As to Dr. Ferdous, Plaintiff explicitly states that he was "completely denied treatment", (*see* Plf. Opp. ¶18.) Plaintiff however, cannot sustain a claim for deliberate indifference against Dr. Ferdous. It is well settled that where an inmate has received adequate care, he has no Eighth Amendment claim. *Salahuddin*, 467 F.3d 279 (noting that initial inquiry is whether there was an actual depirvation). There was no deprivation here. The following are the only allegations related to Dr. Ferdous: (1) Plaintiff wrote letters to Dr. Ferdous that were unanswered, (*see* Compl. at 3); (2) Plaintiff was scheduled to see Dr. Ferdous on May 1, 2015, but his appointment was cancelled, (*id.* at 4, Ex. C); and (3) on May 7, 2015, Dr. Ferdous wrote a medical pass that was ultimately

---

[11] The allegations regarding Alvarado's confiscation of the glasses do not meet the objective prong. Plaintiff has failed to demonstrate that the interference or his medical condition related to his vision were sufficiently serious; indeed, he does not even describe what his medical condition is.

denied by Dr. Gage for "bus pass, cane, shower, feed-up, and transition lens[es]," (*id.*) There is no doubt that unanswered letters cannot give rise to a constitutional violation, particularly where Plaintiff does not identify how many letters were sent or over what period of time they were sent *and* in light of the fact that Plaintiff was able to meet with Dr. Ferdous in person. Additionally, Plaintiff may be upset that Dr. Ferdous cancelled one appointment, but the doctor met with him less than a week later, ultimately amounting to a six day delay, already established by this Court as insufficient for deliberate indifference. *See Munoz v. Eliezer*, No. 16-CV-6049(NSR), 2018 WL 1626170, at *6 (S.D.N.Y. Mar. 30, 2018). Finally, Plaintiff's final allegation clearly does not assert a deprivation whatsoever, as Plaintiff was provided with a broad medical pass by Dr. Ferdous, to which he admits consenting. (*See* Compl. at 4.) Plaintiff's claims against Dr. Ferdous must be dismissed with prejudice.

### 2. Dr. Vernatter[12]

Plaintiff's claims against Dr. Vernatter allege that Dr. Vernatter violated his rights when he failed to administer a shot for Plaintiff's back spasm and failed to provide him with a discharge plan upon exiting Montifiore. (*See* Compl. at 3, Ex. A.) Where, as here, the allegations claim inadequate medical treatment provided, the inquiry focuses on the alleged inadequacy "rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280.

Plaintiff alleges that he was suffering from "a severely painful paralyzing" pain radiating down the left side of his body on April 6, 2015, for which he was transferred to Montifiore for treatment. (*See* Am. Compl. at 3.) Plaintiff was admitted to the hospital and received treatment from Dr. Vernatter for the next three days. (*Id.*) During this time, Plaintiff underwent a CAT Scan, had his blood tested, and was administered Percocet and Baclofen for the pain. (*Id.* at Ex. A.) Dr. Vernatter told him he would receive a shot for his back spasm, but never administered it

---

[12] Dr. Vernatter does not work for DOCCS; he is a doctor at Mount Vernon Hospital. Dr. Vernatter does not to contest his ability to be sued under Section 1983 for constitutional violations as a state actor, so the Court assumes the same.

and Plaintiff was discharged from the hospital without a discharge plan.  (*Id.*)  This treatment was not inadequate.  He went to the hospital complaining of severe pain and was ultimately monitored for three days and prescribed pain medication.  The fact that Dr. Vernatter chose not to give Plaintiff the shot for his alleged back spasm or a discharge plan are not sufficiently serious deprivations.  *See Charles v. County of Orange*, no. 16-CV-5527(NSR), 2017 WL 4402576, at \*11 (S.D.N.Y. Sept. 29, 2017) (finding deprivation of discharge plan not sufficiently serious); *see also Farmer*, 511 U.S. at 844-47 (noting that reasonable care is not a deprivation).[13]

### B.  Subjective Prong

Where deliberate indifference is concerned, negligence or medical malpractice will not "rise to the level of a constitutional violation unless the malpractice involves culpable recklessness."  *Hill*, 657 F.3d at 123 (citing *Chance*, 143 F.3d at 703) (internal quotations and alterations omitted).  Relatedly, so long as a prisoner "receives adequate treatment", he "does not have the right to choose" the treatment he receives.  *Id.* (citing *Estelle*, 429 U.S. 97); *see also Chance*, 143 F.3d at 703 (noting that a prisoner's preference for different treatment does not rise to the level of an Eighth Amendment violation).

### 1.  State Defendants

Plaintiff has pled Dr. Gage's relevant mental state.  Where there are allegations that the prison official knew of and disregarded the plaintiff's serious medical needs, the requisite mental state has been pled.  *Farmer v. Brennan*, 511 U.S. at 837.  The State Defendants' contention that Dr. Gage's decision to deny the treatment recommended by Dr. Galeeno constitutes an exercise in medical judgment is unavailing.  While it is true that a disagreement in treatment, even between a

---

[13] At best, the failure to administer the shot was a decision of medical judgment, not recoverable under the Eighth Amendment, *see Estelle*, 129 U.S. at 107, and at worst constitutes negligence or medical malpractice, equally insufficient for deliberate indifference purposes, *see Hill*¸657 F.3d at 123; *see also Williams v. Wright*, 162 F. App'x 69, 71 (2d Cir. 2006) (summary order) (citing *Estelle*, 429 U.S. at 107) (internal quotations omitted); *see also Hill*, 657 F.3d at 123; *Rush v. Fischer*, No. 09-CV-9918(JKG), 2011 WL 6747392, at \*3 (S.D.N.Y. Dec. 23, 2011) (collecting cases and noting that "decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference . . . .")..

prison doctor and outside specialist, typically reflects medical judgment, not deliberate indifference, *see Williams*, 2009 WL 2431948, at *9, Plaintiff's allegations call that standard into question. Considering all of the facts, including that Dr. Gage wanted Plaintiff to believe security would not permit a double mattress, (*see* Compl. at 5), Plaintiff has pled sufficient facts from which the inference can be drawn that the decision to deny the recommended treatment was not predicated on medical judgment, but on something more – a deliberate choice to deny the treatment.

Further, Plaintiff's allegations with respect to Dr. Gage's conduct in December of 2015 and January of 2016 are sufficient. Construing the Complaint liberally, as this Court must, Dr. Gage, who was originally the FHSD but since demoted and assigned Plaintiff's primary care provider, (*see* Compl. at 6), undoubtedly knew of Plaintiff's extreme pain associated with his herniated and bulging discs and that making Plaintiff wait hours for treatment could cause his condition to deteriorate, but ignored that risk when she called Plaintiff to sick call to wait for hours, (*id.*) The contention that this is no different than private individuals who must wait for physician care, (*see* State Defs. Br. at 10), grossly misconstrues the allegations and dismisses a key allegation which illuminates Dr. Gage's intentions; Plaintiff did not wait hours to be treated by Dr. Gage – Plaintiff waited hours, once a week, only to be told that Dr. Gage *could not* see him. (*See* Compl. at 6.) Plaintiff has met his burden.

Plaintiff has failed, however to allege sufficient facts for Alvarado's mental state. While deliberate indifference can be manifested "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," *Estelle*, 429 U.S. 97, 104-05 (1976), such is true where, unlike here, there is no cause to interfere, *see Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors"); *Covington v. Westchester Cnty. Jail*, No. 96-CV-

7551(SAS), 1997 WL 580697, at *3 (S.D.N.Y. Sept. 18, 1997) (confiscation without cause violates constitution), and the conduct occurs more than once, *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 270 (noting that a single occurrence likely is not sufficient). Plaintiff makes clear that Alvarado confiscated the cane because he was authorized to do so by medical staff, (*aee* Compl. at 6, Ex. K), and this interference only happened once. The claim must be dismissed.[14]

### 2. *Dr. Vernatter*

If the medical deprivation by Dr. Vernatter was considered sufficiently serious, Plaintiff's claim still fails to allege any facts whatsoever from which an inference can be drawn that Dr. Vernatter knew of a serious risk to Plaintiff's health and disregarded that risk. Deliberate indifference has not been established. Further, the decision not to administer the shot amounts to, at most, malpractice, as discussed *supra* III.A.2.

In consideration of the foregoing, the State Defendants' motion to dismiss the Eighth Amendment claims is granted in part and denied in part. The claims against Dr. Gage are the only to withstand the motion. Additionally, Dr. Vernatter's motion is granted.[15]

## IV. <u>Retaliation</u>

Construing the Complaint liberally, as this Court must, Plaintiff appears to assert a claim for retaliation against Dr. Gage– an issue addressed by the State Defendants in a footnote. (*See*

---

[14] In a letter received by the Court on February 17, 2017, (ECF No. 43), which this Court deems Plaintiff's sur-reply to the State Defendants' motion to dismiss, Plaintiff alleges additional facts that Alvarado did not have authorization from medical staff to confiscate his cane or glasses. (*See* ECF No. 43, ¶2). These facts were not asserted in his complaint and thus cannot be considered in deciding the motion. *See LLM Bar Exam, LLC v. Barbri, Inc.*, No. 16CV3770, 2017 WL 4280952, at *21 (S.D.N.Y. Sept. 25, 2017) ("[A] complaint cannot be amended by the briefs in opposition to a motion to dismiss."); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Williams v. Rosenblatt Secs. Inc.*, 136 F. Supp. 3d 593, 609 (S.D.N.Y. 2015). Since Plaintiff's failure amounts to a failure to plead enough facts, he will be granted leave to re-plead these claims against Alvarado.

[15] Plaintiff also alleges violations of various state regulations resulting in a failure to provide legible medical records and a failure to receive a discharge plan prior to his exit from Montifiore. (*See* Compl. at 3, 5.) It is well settled that violations of state regulations, alone, do not raise a right to relief under Section 1983. *Doe v. Conn. Dep't of Child and Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990); *Patterson v. City of New York*, No. 11-CV-7976(DLC), 2012 WL 3264354, at *4 (S.D.N.Y. Aug. 9, 2012). Further, as evidenced above, the conduct which is alleged to violate these regulations, considered separate and apart from its categorization *as* a violation, is insufficient to give rise to a claim for deliberate indifference.

State Defs. Br. at 9.)[16]  Prison officials shall not retaliate against prisoners for exercising their constitutional rights.  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).  Nevertheless, courts should consider retaliation claims with skepticism, *see Turner v. Sidorowicz*, No. 12-CV-7048(NSR), 2014 WL 641454, at *10 (S.D.N.Y. Feb. 18, 2014), as they are "prone to abuse since prisoners can claim retaliation for every decision they dislike," *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)) (internal quotations omitted).  Contrary to the State Defendants' contention, while Plaintiff did not assert retaliation as a separate claim, the pleading is not wholly conclusory.

A claim for retaliation is properly pled by allegations:"(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).  It is well settled that "the filing of prison grievances is a constitutionally protected activity", *see id.*; thus, Plaintiff's allegations that he filed grievances against Dr. Gage that were met with retaliation satisfy the first prong.

## A. Adverse Action

Plaintiff has pled adverse action.  To be adverse, the retaliatory conduct must be such to "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights;" if not, "the retaliatory act is simply *de minimis* . . . . "  *Davis*, 320 F.3d at 353.  This test is objective and applies "even where[, as here,] a particular plaintiff was not himself subjectively deterred."  *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).  In retaliation cases, plaintiffs

---

[16] Some of the statements in the grievances attached to Plaintiff's Complaint regarding Defendant Alvarado's conduct appear to allege that Alvarado confiscated his belongings for "harassment" or retaliation purposes. (*See* Compl. at Ex. K.) These allegations are "wholly conclusory" and cannot support a retaliation claim. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (noting that "complaint of retaliation that is 'wholly conclusory' can be dismissed on the pleadings alone").

must demonstrate harm, and where a prisoner is concerned, "the harm could include such an adverse action as placing a plaintiff in keeplock for a period of weeks." *Id.* at 383.

Plaintiff's numerous allegations that Dr. Gage interfered with his medical passes, (*see* Compl. at 4-5), outright denied his requests for treatment recommended by Dr. Galeeno, (*id.*), and denied Plaintiff any treatment while forcing him to wait at sick call once a week for two months, which exacerbated his back pain, (*see id.* at 6), are sufficient for adverse action. *See Williams v. Fisher*, No. 02-CV-4558(LMM), 2003 WL 22170610, at *11 (S.D.N.Y. Sept. 18, 2003) (finding revocation of necessary medical rehabilitative treatment enough for adverse action). Such conduct would be enough to deter a similarly situated individual of "ordinary firmness" from filing future grievances, despite not deterring Plaintiff from doing so.

### B. Causal Connection

Finally, Plaintiff has pled sufficient facts from which a causal connection between the filing of the grievance and the adverse action can be inferred. There must be facts suggesting that "the protected conduct was a substantial motivating factor in the prison official's decision to take action against" the plaintiff. *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009). Factors courts consider in determining whether a retaliatory motive has been pled include: "(i) the temporary proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Id.* at 367.

Considering the totality of Plaintiff's Complaint, he has met his burden. First, Plaintiff alleges that, on May 6, 2015, he filed a grievance and complaint with the New York State Department of Health against Dr. Gage. (*See* Compl. at 4, Ex. E.) The very next day, Dr. Ferdous authored a broad medical pass that required authorization by Dr. Gage who indicated that she would "think about signing the pass" and ultimately issued a pass for a cane only, on May 12,

2015, not even a week after Plaintiff filed his grievance. (*See* Compl. at 4, Ex. H; *see also* Hale Decl., Ex. A.) The short temporal distance between the filing of the grievance and Dr. Gage's conduct, *see Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (causal connection pled through demonstration that "protected activity was close in time to the adverse action); *see also Turner*, 2014 WL 641454, at *11 (finding causal connection where "alleged retaliatory action was taken directly in response to a grievance"), coupled with allegations that Dr. Gage typically "just sign[s] the pass", (*see* Compl. at 4), suggest a causal connection.

As further evidence of retaliatory motive, Plaintiff alleges two important facts with respect to the denial of the treatment recommended by Dr. Galeeno. Specifically, Dr. Gage told Dr. Ferdous to lie to Plaintiff, stating that security would not permit a double mattress in the facility, (*see* Compl. at 5, Ex. D,) and to bolster that allegation, Plaintiff contends that other inmates in the facility had double mattresses, (*id.*)

Moreover, after Dr. Gage's demotion, she was assigned as primary care provider for Plaintiff, an inmate who had filed numerous grievances against her. (*See* Compl. at 5, Exs. D-H.) Plaintiff's allegations that, thereafter, he was made to appear at sick call, under the guise of having appointments with Dr. Gage, and forced to wait for hours, ultimately receiving no treatment whatsoever, (*see* Compl. at 6), are further evidence of retaliation. *Compare with Burton*, 664 F. Supp. 2d at 368 (causal connection pled where sufficient facts to "imply a retaliatory motive")

## V. <u>Qualified Immunity</u>

The Court need only consider qualified immunity for Dr. Gage, in light of its decision to dismiss all claims against Dr. Ferdous with prejudice and permit Plaintiff leave to re-plead claims against Alvarado.

State officials are entitled to qualified immunity provided "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to

believe their acts did not violate those rights." *Morgan v. Ward*, 14-CV-7921(GHW), 2016 WL 427913, at *7 (S.D.N.Y. Feb. 2, 2016) (citing *Martinez v. Simonetti*, 202 F.3d 625, 633-34 (2d Cir. 2000)); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Granting a 12(b)(6) motion for qualified immunity is appropriate where "the facts supporting the defense appear on the face of the complaint," *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998), *and* "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief," *id.* (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489 (2d Cir. 1992)).

In finding that Plaintiff has properly pled claims for deliberate indifference and retaliation against Dr. Gage, this Court has decided that Plaintiff has established the potential violation of a clearly established constitutional right. Further, the State Defendants argue that Dr. Gage could "have reasonably believed that granting Plaintiff use of a cane to move about the facility did not violate any clearly established federal right." (*See* State Defs. Br. at 14.) This argument ignores the remainder of allegations against Dr. Gage. Considering the totality of allegations, it is evident that Dr. Gage knew the severity of Plaintiff's herniated discs, and at the very least, could not have considered it reasonable to force Plaintiff to wait for hours, once a week and receive no treatment. Further, as to retaliation, the allegations that Dr. Gage made false statements during the grievance process are sufficient. *See Turner*, 2014 WL 641454, at *12 (noting "clearly established that prison personnel may not submit false reports in retaliation against prisoners").

## VI.     State Law Claims

The Court need not linger on whether to assert supplemental jurisdiction over Plaintiff's state law claims. To the extent that any state claims are cognizable on the facts of the Complaint, they are barred against all Defendants in their official capacity. *See Parris*, 947 F. Supp. 2d at

365; *Baker v. Coughlin*, 77 F.3d 12, 15-16 (2d Cir. 1996) (state law claims arising "from acts or omissions within the scope of their employment at DOCCS" dismissible for lack of subject matter jurisdiction); *see also* N.Y. Corr. Law § 24 (requiring that lawsuits related to DOCCS employees' conduct within the scope of their employment, be brought in New York Court of Claims against the State).

Further, insofar as Plaintiff attempts to allege state law claims for negligence against the Defendants in their individual capacity, these claims too must fail as the Court has already determined that the Section 1983 claims are ripe for dismissal. *See Crique v. Magill*, No. 12-CV-3345(PAC)(GWG), 2013 WL 3783735, at *1, 4 (S.D.N.Y. Jul. 9, 2013) (adopting report and recommendation in entirety, including recommendation to not to "exercise supplemental jurisdiction over any state law claims for medical malpractice in light" of dismissal of 1983 claims). Such claims are dismissed without prejudice, and to the extent Plaintiff can cognizably plead same, he can do so in state court.[17]

## VII.  Leave to Amend

Though "[l]eave to amend should be freely granted", this Court declines to allow Plaintiff leave to amend his claims against Dr. Vernatter and Dr. Ferdous, as an amendment would be futile. *See Nognou v. Mayrose*, 400 F. App'x 617, 620 (2d Cir. 2010)(summary order) (quoting *Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002)). As in *Nognou*, Plaintiff's claims against Dr. Vernatter, if anything, amount to no more than negligence and malpractice, thus no amendment could render their conduct actionable. *See id.* (affirming denial of leave to amend on ground that "negligence and medical malpractice" not recoverable under Section 1983). Further, as stated, *supra*, there are no cognizable claims against Dr. Ferdous and this Court will grant Plaintiff leave to re-plead the claims against Alvarado.

---

[17] Even under the most liberal reading, Plaintiff asserts no state law claims in the Complaint against Dr. Gage, the only Defendant against whom any Section 1983 claims remain.

## VIII.  Plaintiff's Motion for Injunctive Relief[18]

Plaintiff also moves for injunctive relief; specifically, requesting that this Court compel Dr. Ferdous to "issue a *temporary* medical pass for: bus pass, cane pass, daily showers, feed-up, and transition lenses" not to expire until a disposition of this matter.  (*See* Plf. Mot., at 2.)  In opposition, the State Defendants argue that the motion should be dismissed for failure to exhaust administrative remedies and that Plaintiff has otherwise failed to meet his burden of establishing entitlement to an injunction.  (*See* The State Defendants' Opposition to Plaintiff's Motion ("Defs. Opp.") (ECF No. 58), at 1-2.)[19]

Injunctive relief is "an extraordinary remedy", only appropriate in limited circumstances. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  Where, as here, the injunctive relief requested is mandatory, in that it seeks compulsion of positive action, the standard is particularly high.  *Almontaser v. New York City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (internal alterations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("[W]e have required the movant to meet a higher standard where . . . an injunction will alter . . . the status quo, . . . .").  To be entitled to relief, the proponent must show, in addition to irreparable harm in absence of relief, a "clear or substantial showing" of entitlement

---

[18] Plaintiff also filed a second reply in support of his motion, a document entitled "Reply After Receiving Medical Documents" ("Plf. Reply 2") after he allegedly received certain medical records.  (*See* ECF No. 66.)  This Court has not been provided copies of any of these medical records, and nevertheless would not consider them in determining the merits of the motion for injunction, since Plaintiff has failed to exhaust his administrative remedies, as discussed *infra* VII.A.  This Court has reviewed this second reply and finds that it fails to alter the result.

[19] In his reply, Plaintiff makes the following additional assertions: (1) "Defendant's [sic] should automatically schedule follow-up appointments prior to the expiration of medical passes and prescriptions for known medical concerns/issues that can cause extreme pain", (*See* Plaintiff's Reply in Support of Motion for Injunction ("Plf. Reply") (ECF No. 65), ¶2); (2) Plaintiff was left without . . . Naproxen and Claritin until June 20, 2017 . . . .", (*id.* ¶3); (3) [t]here have been serious issues in Sing Sing C.F. when officer's [sic] get involved by interfering with prisoner's [sic] medical care and failing to perform specific job duties including coercion and retaliation by medical staff . . . . [and t]hree inmates have passed away in Sing Sing C.F. in the span of one week" (*id.* ¶5).  The Court will not consider these assertions to the extent that they attempt to raise claims not asserted in the Complaint and are wholly unrelated to the conduct giving rise to the request for injunctive relief in the opening papers.  *See United States v. East River Housing Corp.*, 90 F. Supp. 3d 118, 162 (S.D.N.Y 2015) (collecting cases noting that new arguments raised in reply papers will not be considered).

to the relief requested, or that "extreme or very serious damage will result from a denial of preliminary relief." *Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2d Cir. 2003).

Further, it is well settled in this Circuit that an inmate must exhaust all of his administrative remedies for every claim asserted. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016); *see also Richardson v. Hillman*, 201F. Supp. 2d. 222, 228 (S.D.N.Y. 2002) (citing *Porter v. Nussle*, 534 U.S. 516 (2002) for proposition that any and all claims related to prison life must be exhausted). Indeed, exhaustion is required for claims for damages and claims for injunctive relief alike. *Amador v. Andrews*, 655 F.3d 89, 95 (2d Cir. 2011).

## A. Exhaustion[20]

Contrary to Plaintiff's unsupported assertion that exhaustion is not necessary for injunctive relief, (*see* Plf. Reply ¶6), the motion is ripe for dismissal for lack of exhaustion. It is axiomatic that a prisoner alleging claims pursuant to 42 U.S.C. § 1983 must first exhaust all available administrative remedies before filing a lawsuit. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

Preliminarily, Plaintiff cannot rely on exhaustion of his claims in the Complaint as a means to say he has exhausted the claims in his motion for injunctive relief. While the claims alleged in the Complaint relate to deliberate indifference, the conduct alleged in support of the motion occurred at least a year after the conduct in the Complaint; thus, by definition they are unrelated to one another. If this Court granted this relief, it would in effect be permitting Plaintiff to proceed on a theory not alleged in the Complaint and subvert the exhaustion requirement. *Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp. 3d 593, 616 n.11 (S.D.N.Y. 2015) (noting that "party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed"

---

[20] Defendants also argue that Plaintiff's Motion is moot because his previous medical passes were renewed on May 31, 2017. (*See* Defs. Opp., at 3-4.) At the time Defendants opposed Plaintiff's motion, the existence of the issued medical pass did in fact moot the motion. Nevertheless, the new pass would have long expired by now and the larger issue is one of exhaustion, which this Court must address.

in the motion and conduct in the complaint); *Grullon v. Reid*, No. 97-CV-7616(RWS), 2000 WL 648891, at *1 n.1 (S.D.N.Y. May 19, 2000) (same); *see also Dorsey v. Artus*, No. 9:09-CV-1011(GLS/DEP), 2013 WL 5463720, at *4 (N.D.N.Y. Sept. 30, 2013) (denying motions for injunction unrelated to the allegations in the complaint). The fact that the conduct was unrelated leads to the conclusion that Plaintiff was required to exhaust his claims for this separate, unrelated conduct before requesting relief in federal court. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . ."). Plaintiff has plainly admitted that he has not done so. His motion must be denied. *See Royster v. Spitzer*, No. 05-CV-6635(JSR)(LMS), 2011 WL 2020442, at *3 (S.D.N.Y. Mar. 28, 2011) (denying motion for injunction for failure to exhaust administrative remedies).[21]

Plaintiff is thus advised to address the issue of the renewal of his medical pass, to the extent it persists as an issue, through the available administrative procedures and then request an opportunity to amend the complaint, or file a separate action where appropriate.

This Court declines to consider the merits of Plaintiff's motion as exhaustion is a necessary prerequisite. The Court nonetheless notes that the motion would also fail on the merits because Plaintiff's medical pass was ultimately renewed on May 31, 2017, precluding his ability to demonstrate imminent, irreparable harm. *Compare Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (noting that, typically, pleading a constitutional violation suffices) *with McKenna v. Wright*, No. 01-CV-6571(WK), 2002 WL 338375, at *4 (S.D.N.Y. Mar. 4, 2002) (noting that imminent requirement compels courts to look beyond past injury).

---

[21] Plaintiff filed subpoenas duces tecum contemporaneously with his Reply. (*See* ECF No. 65.) Read in context with the Reply, Plaintiff appears to be requesting certain documents to rebut the contentions made by Sergeant John Ruane and Sergeant Gina Shibah in opposition to this motion. (*See* Plf. Reply, ¶¶12, 18.) Having decided Plaintiff's Motion without reference to the Declarations of either sergeants, this Court hereby declines to issue Plaintiff's subpoenas. To the extent the issuance of such subpoenas will prove fruitful in discovery, Plaintiff is permitted to request issuance of them at such time.

## IX.    Plaintiff's Motion for Sanctions

While not filed as a motion, Plaintiff seeks sanctions.  (*See* Plf. Reply in Further Support of Motion for Injunction (ECF No. 65), at 5; *see also* ECF No. 68.)  Plaintiff merely filed a "Notice of Motion" for sanctions which requests relief pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.  (*Id.*)  The motion fails for multiple reasons.

First, Rule 11(c)(2)'s safe harbor provision requires a twenty-one day window between service of the motion and filing, within which the party against whom sanctions is requested can withdraw or correct "the challenged paper, claim, defense, contention or denial."  *See* Fed. R. Civ. P. 11(c)(2).  Failure to adhere to the safe harbor provision mandates denial of a motion for sanctions.  *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995); *Johnson v. Wolan*, No. 10-CV-1622(RJH), 2010 WL 5076821, at *5 (S.D.N.Y. Dec.13, 2010).  Plaintiff's notice of motion was dated July 6, 2017 and filed on July 10, 2017; Defendants were not provided the twenty-one days required by Rule 11.  Plaintiff's July 24, 2017 notice of motion for sanctions, (*see* ECF No. 68), fares no better.  It is dated on July 24, 2017 and received by the Court on July 28, 2017.  Both must be denied.

Second, a Rule 11 motion "must be made separately from any other motion . . . ."  *See* Fed. R. Civ. P. 11(b); *see also Avent v. Solfaro*, 223 F.R.D. 184, 187 (S.D.N.Y. 2004).  Plaintiff not only moves contemporaneously under Rule 11 and 28 U.S.C. § 1927, but also incorporates the motion for sanctions into his reply in support of his motion for an injunction; warranting denial. *See Avent*, 223 F.R.D. at 187 (denying motion where plaintiff "filed his Rule 11 motion in conjunction with a motion pursuant to 28 U.S.C. § 1927); *Johnson*, 2010 WL 5076821, at *5

(denial where motion for sanctions made along with a motion to dismiss); *see also Eady v. Lappin*, No. 05-CV-0824, 2007 WL 1531879, at *4 (N.D.N.Y. May 22, 2007).

Any motion pursuant to 28 U.S.C. § 1927 is equally unavailing. The statute permits sanctions against "any attorney" or other admitted individual "who so multiplies the proceedings in any case unreasonably and vexatiously. . . ." *See* 28 U.S.C. § 1927. Plaintiff simply makes no claims that Defense counsel unreasonably or vexatiously multiplied the proceedings. *Compare with Avent*, 223 F.R.D. at 188 (properly asserted under §1927 where alleged that defendants made "false and groundless motions during discovery" and that such conduct "caus[ed] delay and multipl[ied] the proceedings"). Plaintiff's motion for sanctions is denied.

## CONCLUSION

In light of the foregoing, the Court hereby resolves each of the motions as follows:

The State Defendants' motion to dismiss Plaintiff's Complaint is hereby **GRANTED** in part and **DENIED** in part. The motion is denied as to the claims against Dr. Gage since Plaintiff has alleged claims for deliberate indifference and retaliation for which Dr. Gage is not entitled to qualified immunity. The motion is granted as it relates to Dr. Ferdous and CO Alvarado and the Complaint is hereby dismissed against these Defendants. Plaintiff is granted leave to re-plead his claims against Alvarado. The motion is also granted insofar as it seeks dismissal of claims against the State Defendants in their official capacities, by operation of sovereign immunity.

Dr. Vernatter's motion to dismiss is **GRANTED** and Plaintiff's Complaint as against him is dismissed with prejudice.

Plaintiff's Motion for a Preliminary Injunction is **DENIED** for failure to exhaust administrative remedies.

Plaintiff's Motion for Sanctions is **DENIED**.

This Court further notes that Plaintiff's motion for injunctive relief represents the third time Plaintiff has attempted to seek this Court's intervention for alleged constitutional violations unrelated to the conduct asserted in the Complaint. (*See* ECF Nos. 73 and 77.) On each occasion, the Court has had to remind Plaintiff of his obligation to exhaust all administrative remedies before asserting claims in federal court. (*Id.*) Plaintiff is cautioned to refrain from requesting further intervention from the Court that is unrelated to the conduct alleged in the Complaint. Any other alleged constitutional violations Plaintiff suffers must be asserted through the appropriate administrative channels before he can seek legal redress in a court of law.

Only the Eighth Amendment claim for deliberate indifference and the First Amendment claim for retaliation against Dr. Gage remain; he is thus directed to Answer the Complaint on or before May 4, 2018. Plaintiff may re-plead his claims against Alvarado. If he fails to do so on or before May 7, 2018, the claims against Alvarado will be dismissed with prejudice. The Court will thereafter set a schedule for the completion and submission of a case management plan. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 33, 45, and 56. The Clerk of Court is further respectfully directed to terminate Defendants Joshua Vernatter and Razia K. Ferdous, as all claims against them are dismissed with prejudice.

Dated: April 6, 2018
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

26