USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/9/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTHONY ARRIAGA,

       Plaintiff,

-against-

DR. DANA GAGE (N.Y.S. D.O.C.C.S. SING SING C.F. HEALTH CARE PROVIDER) *Individually*; C.O. ALVARADO (SING SING C.F. CORRECTION OFFICER) *Individually*,

       Defendants.

16-cv-1628 (NSR)

OPINION AND ORDER

---

NELSON S. ROMÁN, United States District Judge

  Plaintiff Anthony Arriaga ("Plaintiff"), proceeding *pro se*, commenced this action on March 3, 2016, pursuant to 42 U.S.C. § 1983 for alleged Eighth and First Amendment violations, (*see* Complaint, ("Compl."), ECF No. 2), against Defendants Dana Gage ("Dr. Gage"), Razia K. Ferdous ("Dr. Ferdous"), Corrections Officer Alvarado ("Alvarado"), and Joshua Vernatter ("Dr. Vernatter") (collectively, "Defendants"). On April 6, 2018, this Court ruled on Defendants' first Motion to Dismiss the Complaint and a few other motions. (Opinion, ECF No. 79.) In its decision, the Court: (1) dismissed the Complaint against Dr. Ferdous and Dr. Vernatter with prejudice; (2) dismissed the Complaint against Alvarado without prejudice; (3) dismissed all claims against Defendants in their official capacities; (4) denied Plaintiff's Motion for a Preliminary Injunction for failure to exhaust administrative remedies; (5) denied Plaintiff's Motion for Sanctions; and (6) denied Defendants' Motion to Dismiss the Eighth and First Amendment claims against Dr. Gage. The Court also granted Plaintiff permission to file an amended complaint for his claims against Alvarado, which Plaintiff did on June 5, 2018. (*See* Amended Complaint, ("AC"), ECF No. 85.)

1

Presently before the Court is Defendants' Motion to Dismiss the AC. (Defendants' Memorandum, ("Def. Mem."), ECF No. 90.) For the following reasons, the motion is DENIED.

**<u>FACTUAL BACKGROUND</u>**

All plausible facts from the Complaint and Amended Complaint are accepted as true for the purpose of this motion. The majority of background facts need not be repeated here, as they are undisputed as characterized in the Court's previous Order. (*See* Opinion, at 2-6.) Because the Court granted Plaintiff leave to re-plead its claims against Alvarado, (*id*. at 20), the only facts added are those that have been re-pleaded regarding Alvarado's conduct.

Plaintiff is an incarcerated *pro se* inmate at Sing Sing Correctional Facility. Plaintiff suffers from herniated and bulging disks that cause him extreme back pain. In early April 2015, Plaintiff began complaining about back pain to the nurses at sick call and sent letters to his then health care provider, Dr. Ferdous, which went unanswered. On April 6, 2015, Plaintiff's pain became so intolerable that he was transferred to Montefiore Mount Vernon Hospital and admitted for three days, unable to move. During his time there he was treated by Dr. Vernatter and underwent a CAT scan, blood tests, and was prescribed Percocet and Baclofen for the pain. Dr. Vernatter told Plaintiff he would also give him a shot for his back, which he purportedly never did.

When Plaintiff returned to Sing Sing, he was admitted to the facility's infirmary, which later discharged him with a medical pass granting: daily showers, use of a cane, and relief from work and sports. The pass expired on April 27, 2015, and although Plaintiff tried to renew it, he was unsuccessful. In the subsequent months, Plaintiff was also treated by Dr. Gage. After tedious efforts at getting a new medical pass, Dr. Ferdous issued a pass that allowed Plaintiff to take daily showers, carry a cane, receive feed-up (where food is brought to the inmate's cell), and wear transitional lenses. This pass had to be signed by Dr. Gage. When she finally signed it, she only permitted Plaintiff to use a cane. Dr. Gage was eventually demoted and remains a party to this suit.

*Facts Pertaining to Alvarado*

Plaintiff alleges that on May 26, 2015, while passing through the magnometer, Alvarado maliciously and willfully confiscated his cane and his medical pass authorizing use of the cane without authority to do so. Plaintiff then filed a grievance about the incident.

Subsequently, on December 14, 2015, Alvarado again, allegedly intentionally and maliciously, confiscated Plaintiff's prescription glasses and wrote a misbehavior report ("First Report") against him. At a hearing related to the misbehavior report, Plaintiff was found guilty, but the hearing officer ordered that Plaintiff receive his glasses. Plaintiff never received his glasses because another Corrections Officer mailed them to Plaintiff's mother. Plaintiff then filed another grievance for how Alvarado interfered, denied, and changed Plaintiff's medical treatment by confiscating his glasses. Plaintiff also filed an Article 78 proceeding, challenging the determination made in Plaintiff's initial misbehavior report. The proceeding reversed the first disposition and ruled in Plaintiff's favor.

Alvarado is not a medical staff member, Plaintiff's Health Care Provider, nor an Orthopedic Specialist. Plaintiff asserts that Alvarado was aware of Plaintiff's medical condition and was present numerous times when Plaintiff sought medical treatment due to his back pain and saw Plaintiff walking with a cane, in pain, and bent forward. Plaintiff asserts that Alvarado never consulted with medical staff, nor obtained authorization from them to wrongfully confiscate Plaintiff's cane and prescription eyeglasses.

Plaintiff states that Alvarado knows that a medical pass is prescribed by medical staff for medical treatment, and therefore, Alvarado abused his authority and disregarded Plaintiff's medical needs. Plaintiff also claims that Alvarado retaliated against Plaintiff for filing the Article 78 proceeding. Plaintiff claims that Alvarado did so by filing the second misbehavior report on September 15, 2017 ("Second Report"). This led Plaintiff to file another Article 78 proceeding that

reversed the result of the Second Report in Alvarado's favor. Plaintiff consequently seeks monetary and punitive damages for his pain and suffering and for Alvarado's "maliciousness."

## LEGAL STANDARD

**Motion to Dismiss**

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Courts must construe *pro se* pleadings in a particularly liberal fashion, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them "to raise the strongest arguments that they suggest," *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleading must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the Court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

**Medical Deliberate Indifference**

A claim for inadequate medical care is born out of the Eighth Amendment's protection against cruel and unusual punishment. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (citing

4

*Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). To be entitled to relief, a plaintiff must plead and prove "deliberate indifference to his serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)) (alterations omitted).

Deliberate indifference is a dual-pronged analysis requiring proof of both an objective and subjective prong. *Id*. The objective prong mandates that the deprivation be, "in objective terms, sufficiently serious." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotations omitted). Then, to satisfy the subjective prong, a plaintiff must show that the official acted with "a sufficiently culpable state of mind," *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991), in that the official "must know of and disregard an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

**Retaliation**

Prison officials are prohibited from retaliating against prisoners for exercising their constitutional rights. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Courts should consider retaliation claims with skepticism, *Turner v. Sidorowicz*, No. 12-CV-7048(NSR), 2014 WL 641454, at *10 (S.D.N.Y. Feb. 18, 2014), as they are "prone to abuse since prisoners can claim retaliation for every decision they dislike," *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)) (internal quotations omitted). A claim for retaliation is properly pled by allegations: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord*, 320 F.3d

346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). It is well settled that "the filing of prison grievances is a constitutionally protected activity." *Id.*

**Qualified Immunity**

Absent abrogation by Congress, a state is immune from suit in federal court. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-56 (1996). This immunity extends to "arms of the state," which includes "officers employed by agencies such as" DOCCS. *Dube*, 900 F.2d at 594-95. Section 1983 claims against state officers in their official capacity are ripe for dismissal, as those officials are not considered "person[s] within the meaning of the statute." *Id.* (citing *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012)).

Further, "[q]ualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). The shield operates insofar as government actors' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)). The immunity protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 107 S. Ct. 3034, 3039 97 L. Ed. 2d 523, 640 (1987). "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Id.* (citation omitted).

## DISCUSSION

**Deliberate Indifference**

For Plaintiff to establish a prima facie case of deliberate indifference, he must satisfy both the subjective and objective prongs of the deliberate indifference test for either the confiscation of his cane, his eyeglasses, or both.

## A. Objective Prong

The objective prong requires a two-part inquiry. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). First, there must be an actual "deprivation of adequate medical care," *id.* at 279; reasonable care is not a deprivation, *see Farmer*, 511 U.S. at 844-47. Then, the Court must determine whether that deprivation is sufficiently serious—that is, whether it produces "a condition of urgency [or] may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122 (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

Here, the fact that Plaintiff's cane and eyeglasses were confiscated suffices as a "deprivation." That leaves the requirement that the deprivation be sufficiently serious such that it results in a "condition of urgency" or produces "death, degeneration, or extreme pain." *Id*.

In its last decision, the Court already held that "Plaintiff has alleged severe back pain which results from his herniated and bulging discs, a sufficiently serious condition [because] such condition is associated with extreme pain and leads to degeneration." (Order at 10) (citations omitted). The Court also held that the central claim against Alvarado—that he "interfered with Plaintiff's medical treatment when he confiscated Plaintiff's cane despite [Plaintiff] having a medical pass for it" was an actual deprivation because "by confiscating his cane, Alvarado denied him medical treatment." (*Id*. at 11.) Hence, the Court has already found that Alvarado's depriving Plaintiff of his cane – a prescribed medical treatment for his herniated disks – fully satisfies the objective prong for deliberate indifference. In this regard, nothing has changed.

The Court next turns to Plaintiff's eyeglasses. Here, it finds that Plaintiff's repleaded allegations add little beyond what was already in the Complaint. The Court finds that, as before, the AC does not allege that Plaintiff's eyeglasses were required to treat a "serious medical need" related to vision. That is still the case, and Plaintiff has not elaborated, in his AC, what harm, if any, the new deficiency has caused or will cause Plaintiff.

7

In his brief, however, Plaintiff has added a few details relating to his need for glasses, including that he was "prescribed transition eyeglasses for reading" and "transition lenses due to headaches when out in the sun." (Pl. Opp. at 5-6.) He also claims that he "suffered headaches at the times when he was outdoors under the sun and was unable to do certain job assignment related duties (read documents, briefs, do legal research, etc…), college homework… and everyday reading." (*Id*.) Defendants argue that such allegations do not make Plaintiff's condition "sufficiently serious" (Def. Rep. at 4.) Unlike the case Plaintiff cites, they state "Plaintiff does not allege that the alleged headaches were debilitating or cause him severe and constant pain." (*Id*.)

The Court agrees. Even forgiving the fact that these additional facts appear in Plaintiff's brief and not the AC, *see Rodriguez v. Rodriguez*, No. 10-cv-891, 2013 WL 4779639 (S.D.N.Y. July 8, 2013) (permitting court to consider factual allegations contained in a pro se litigant's opposition papers that were not in four corners of complaint), such allegations do not rise to the level of severity found in *Koehl v. Dalsheim*, 85 F.3d 86, 87 (2d Cir. 1996), nor the general level of severity contemplated by the Eighth Amendment. *Cf. Beauvoir v. Falco*, 345 F. Supp. 3d 350, 373 (S.D.N.Y. 2018) (NSR) (explaining that the Eight Amendment prohibits unduly harsh penalties not *de minimus* deprivations).

Accordingly, Plaintiff's claims based on the deprivation of his eyeglasses do not meet the objective prong of the deliberate indifference test as currently pleaded. Therefore, the Court continues its analysis with regards to Alvarado's confiscating Plaintiff's cane and medical passes.

### B. Subjective Prong

Where deliberate indifference is concerned, negligence or medical malpractice will not "rise to the level of a constitutional violation unless the malpractice involves culpable recklessness." *Hill*, 657 F.3d at 123 (citing *Chance*, 143 F.3d at 703) (internal quotations and alterations omitted). Relatedly, where a prisoner "receives adequate treatment", he "does not have

the right to choose" the treatment he receives. *Id.* (citing *Estelle*, 429 U.S. 97); *see also Chance*, 143 F.3d at 703 (noting that a prisoner's preference for different treatment does not rise to the level of an Eighth Amendment violation).

By a thread, Plaintiff has satisfied the subjective prong regarding Alvarado's confiscation of his cane. The AC alleges slightly more detail about Alvarado's mental state than it did previously – and not by simply inserting the conclusory boilerplate language that Alvarado "intentionally and maliciously discriminated with willful or wanton negligence or recklessness or conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard with evil motive or intent, deliberate indifference…." Rather, the AC substantively adds:

- "This defendant was aware of Plaintiff's medical condition when he was present numerous times when Plaintiff had to seek medical treatment due to his back pain; including when correction staff would occasionally inquire when Plaintiff was seen walking with a cane in severe pain and bent forward."

- "Alvarado never consulted with medical or obtained authorization from medical staff to wrongfully and illegally confiscate … Plaintiff's cane and prescription eyeglasses on two (2) separate occasions; changing and denying Plaintiff's prescribed medical care/treatment."

These statements allow Plaintiff to overcome the flaws from his previous pleadings, which relayed that Alvarado had only once tried to confiscate an item for which Plaintiff had a medical need and had done so under the guidance of medical authority. The new allegations assert that Alvarado's conduct was subjective similarly to Dr. Gage's and constituted "a deliberate choice to deny the treatment." (*See* Opinion at 13-15.) Therefore, Alvarado's confiscating Plaintiff's cane and medical passes are plausibly alleged violations of his Eighth Amendment rights. Accordingly, Defendant's motion to dismiss Plaintiff's Eighth Amendment claim against Alvarado is denied.

**Retaliation**

A claim for retaliation is properly pled by allegations: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that

there was a causal connection between the protected speech and the adverse action." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). Further, "[t]he causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Baskerville v. Blot*, 224 F.Supp. 2d 723, 732 (S.D.N.Y. 2002).

Turning to the first requirement, it is well settled that "the filing of prison grievances is a constitutionally protected activity", *see Davis,* 320 F.3d at 352; thus, Plaintiff's allegations that he filed two grievances against Alvarado satisfy the first prong.

Focusing next on the adverse action, Plaintiff has pled this too. To be adverse, the retaliatory conduct must "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights;" if not, "the retaliatory act is simply *de minimis* . . . ." *Id.* at 353. The test is objective and applies "even where a particular plaintiff was not himself subjectively deterred." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).

Construing Plaintiff's complaint liberally, Plaintiff claims that Alvarado retaliated against him by: 1) confiscating his prescription glasses and medical passes for his cane, bus, and shower; and 2) by filing two false misbehavior reports against him. (AC at 6-8.) Both of these qualify as adverse actions. *See Williams v. Fisher*, No. 02-CV-4558(LMM), 2003 WL 22170610, at *11 (S.D.N.Y. Sept. 18, 2003) (finding revocation of necessary medical rehabilitative treatment enough for adverse action); *Arriaga v. Gage*, No. 16-CV-1628 (NSR), 2018 WL 1750320 (S.D.N.Y. Apr. 6, 2018) (finding that interferences with Plaintiff's medical passes constituted adverse actions).

This leaves the last prong—that there be a causal connection between the protected speech and the adverse action. Defendants argue that there is no causal connection between the Plaintiff's grievance that was filed on May 2015 and Alvarado's misbehavior report that was filed seven

months later in December 2015. (Def. Mem. at 7.) They also argue that there is no connection between the misbehavior report that Alvarado filed in September 2017, which was more than a year after Plaintiff filed his second grievance. (*Id*. at 8.)

The Court disagrees with the Defendants. The facts reflect that Plaintiff filed his first grievance on May 13, 2015, which regarded his being unable to get his medical passes signed. Alvarado confiscated Plaintiff's cane and medical passes on May 26, 2015. Thus, Alvarado's first set of allegedly retaliatory acts took place less than two weeks after Plaintiff engaged in constitutionally protected activity and easily satisfy a showing of causation.

The purported retaliation related to Plaintiff's second grievance is harder to see. While the AC reflects that Plaintiff filed a grievance in response to the December 14, 2015 incident, shortly after Alvarado confiscated Plaintiff's glasses and issued the first misbehavior report, there is no date provided for when the second grievance was filed and when the related Article 78 proceeding commenced or culminated. Absent any additional facts regarding the temporal proximity of Plaintiff's second grievance and Alvarado's second misbehavior report, the Court finds it near impossible to find a causal relationship sufficient to support retaliation based on timing alone.

That said, the series of events with Alvarado's pattern of repeatedly filing misbehavior reports shortly after Plaintiff files grievances related to his medical needs, in conjunction with the repeated outcomes of the Article 78 hearings, certainly support a theory of retaliation, particularly since Alvarado filed his first misbehavior report hardly two weeks after Plaintiff's first grievance. Accordingly, Defendant's Motion to Dismiss the retaliation claim against Alvarado is denied.

**Qualified Immunity**

The Court already ruled in its last decision that qualified immunity protects each Defendant in their official capacity. The issue here is whether there are enough facts to establish that Alvarado was acting in his official capacity, and not according to his personal prerogative.

Defendant argues that Alvarado is entitled to qualified immunity because in addition to Plaintiff not establishing the violation of a clearly protected constitutional right, "the facts alleged do not plausibly show that Plaintiff suffered a sufficiently serious deprivation of medical care to *due to* CO Alvarado's alleged deliberate indifference." (Def. Mem. at 9) (emphasis added). In other words, Defendant argues, "the facts alleged do not establish that CO Alvarado *personally* made the decision to confiscate Plaintiff's cane and/or eyeglasses." (*Id*.) (emphasis added). Defendant adds that Alvarado is entitled to qualified immunity "for the additional reasons that he reasonably believed that confiscating Plaintiff's cane upon the direction of medical staff did not violate any clearly established federal right belonging to the Plaintiff." (*Id*.)

The Court has already found that Plaintiff's constitutional rights were violated. Hence, Defendant's first argument is a non-starter. As to the argument that the alleged facts reflect that Alvarado did not *personally* make the decision to confiscate Plaintiff's cane or eyeglasses, but did so upon the direction of medical staff, the AC states otherwise:

- "Alvarado… intentionally and maliciously discriminated…by confiscating my cane and medical passes for my cane, bus, shower, etc… (*allegedly* under the direction of 'medical staff')" (AC at 6.)

- "Alvarado had no authority to change or take away my medical treatment since he is not my doctor; nor can medical staff give him authorization to do so." (*Id*.)

- "Alvarado never consulted with medical or obtained authorization from medical staff to wrongfully and illegally confiscate (these confiscations are outside the scope of Defendant's job duties and violations of law) Plaintiff's cane and prescription eyeglasses…" (*Id*. at 7.)

- "Alvarado does not claim that he consulted with medical staff nor is there any evidence to support this lie." (*Id*.)

Giving the AC a liberal construction, it certainly alleges that Alvarado made these decisions independently, and based on no oral or written authority from any medical staff, despite his statements to the contrary. On these facts, Defendant's claim of qualified immunity cannot stand. Hence, the motion to dismiss the other claims on this basis, too, is denied.

12

## CONCLUSION

For the foregoing reasons, Defendant's Motion is DENIED. The Clerk of the Court is respectfully directed to terminate the Motion at ECF No. 90. Alvarado is directed to file an answer on before May 24, 2019.

After filing an answer, Defendant is directed to confer with Plaintiff and submit a completed case management to the Court by June 14, 2019. The Clerk of the Court is respectfully directed to mail a copy of this Order to Plaintiff at his address as listed on ECF.

Dated: May 9, 2019  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge

UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK  

Rev. Jan. 2012

------------------------------------------------------------x

                           Plaintiff(s),      **CIVIL CASE DISCOVERY PLAN**  
                                                **AND SCHEDULING ORDER**

    - against -

                           Defendant(s).     _____ CV _____ (NSR)

------------------------------------------------------------x

     This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge